UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEANNA DIXON,<br><br>                                    Plaintiff,<br><br>v.<br><br>XPO LOGISTICS, LLC, and DOES 1<br>through 20, inclusive,<br><br>                                    Defendants. | Case No.:  3:18-cv-2743-L-MDD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court in this action alleging gender discrimination and retaliation in violation of California Government Code §§ 12900, is Defendants' motion for summary judgment.  The action was removed from state court based on diversity jurisdiction. The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, Defendants' motion is granted in part and denied in part.

I.    **BACKGROUND**

Plaintiff began her employment with Defendant XPO Logistics Freight, a global provider of transportation and logistics services, in July 2007, as a Freight Operations Supervisor. During her time with XPO, she held a variety of positions in many locations

1

throughout the United States including Supervisor of Employee Relations and Training, Service Center Manager ("SCM")), and Office Manager.

In July 2014, Plaintiff interviewed for a promotion to a Class 2[1] facility in Oakland, CA, and made it to the final round of interviews, but was not selected for the position.  In August 2014, Plaintiff interviewed for another promotion, this time to a Class 1 facility in Fort Worth, TX, and again made it to the final round of interviews, but was not selected for the position. Men were selected for both positions.

On February 22, 2015, Neil Smith ("Smith"), former Regional Vice President of Operations-Western Region, interviewed and hired Plaintiff for a promotion to SCM for XPO's Service Center in San Diego, California. As SCM in San Diego, Plaintiff was responsible for supervising a team of approximately 80 employees, 5 who reported directly to her. In addition, Plaintiff was responsible for managing the day to day operations including training employees, monitoring standards to ensure goals were met, and enforcing all company policies and mandatory labor requirements. Plaintiff had discretion to discipline employees, conduct employee investigations, and issue corrective actions when needed.  Plaintiff was responsible for holding monthly Round Table meetings with random samplings of her team to discuss what was going well and areas that needed improvement.

In January and February 2017, Plaintiff issued discipline reports to four male employees in the San Diego facility.  Subsequently, each of the four disciplined individuals threatened to bring a union vote to the company, despite XPO policies against union action.

In early March 2017, Plaintiff informed Human Resources Generalist, Wendy Mairena, that several members of Plaintiff's team were upset over receiving disciplinary

---

[1]Plaintiff notes that the service centers were ranked from 1 to 6, with the lower number indicating a higher volume facility, and the higher numbers indicating a facility with fewer responsibilities.  (Pl. Dep. Ex A. at 61).

action. Mairena conducted investigatory interviews with the complaining employees between March 15, 2017 and March 17, 2017, which also included a Round Table meeting on March 17, 2017.  Although Plaintiff was generally required to be at all Round Table meetings, she was given a paid day off to encourage the employees to be forthcoming about their concerns.  The results of the interviews were reported to Mareina's supervisor, Ms. Lenahan via email.

On March 20, 2017. Mairena and Lenahan conducted more investigatory meetings with members of Plaintiff's team to follow-up on their concerns.  As a result of the findings, the investigation was elevated to Plaintiff's second-level supervisor Neil Smith who conducted his own investigatory meetings on March 22, 2017, with members of Plaintiff's team who reported difficulties with Plaintiff's management, along with concerns regarding inadequate staffing. Smith's findings were reported to Mairena and Lenahan, and the three supervisors concluded that Plaintiff had lost the confidence of her team which made her ineffective in that role. In reaching this conclusion, the team noted that if things didn't improve, the employees who were complaining would likely seek help from the union. Smith, Mairena and Lenhahan decided that termination was the best course of action, and terminated Plaintiff's employment effective March 31, 2017 for "overall poor leadership as evidenced by the loss of confidence of the . . . team." (Motion at 5). Plaintiff was not informed about the findings of the meetings prior to her termination.

On January 3, 2018, Plaintiff filed an employment discrimination complaint with the California Department of Fair Employment and Housing (DFEH) claiming gender and age discrimination, and retaliation in violation of Fair Employment and Housing Act ("FEHA"), California Government Code Section 12900 et seq.  (*see* Complaint at ¶ 9. ECF No. 1-2.]) Plaintiff received a "right to sue" notice from the DFEH on the same day. (Complaint Ex. A at 2).  Plaintiff filed this action in state court and it was removed on the basis of diversity to this Court on December 5, 2018.

Plaintiff contends that she did not obtain advancement positions in 2014 but other less qualified male applicants were selected due to gender discrimination. (Complaint ¶¶ 19-20). Plaintiff further alleges that Defendants terminated her in retaliation for reporting threats that individuals she disciplined were planning to bring in union activity. (Complaint ¶¶ 57). She also raises claims for failure to prevent discrimination, wrongful termination, and declaratory relief. (Complaint at ¶¶ 45, 64, 77).

Defendants filed a motion for summary judgment, arguing the action should be dismissed because (1) the statute of limitations on Plaintiff's failure to promote claims has expired; (2) Plaintiff cannot establish a prima facie case of gender discrimination and cannot demonstrate that Defendants' legitimate non-discriminatory reason for her termination is a pretext for discrimination; (3) Plaintiff cannot establish a prima facie claim for retaliation and cannot demonstrate that Defendants' legitimate non-discriminatory reason for her termination is a pretext for retaliation; (4) Plaintiff's claims for "failure to prevent" discrimination or retaliation, wrongful termination, declaratory relief and punitive damages fail as a matter of law.   Plaintiff opposes the motion.

## II. DISCUSSION

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case

on which that party will bear the burden of proof at trial.  *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must draw all inferences from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  The court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

### A.   Statute of Limitations – Failure to Promote

A plaintiff raising a claim under FEHA must file a complaint with the Department of Fair Employment and Housing ("DFEH") within one to three years of the date of the alleged unlawful action, depending on the code section under which the complaint is filed.  Cal. Gov. Code  § 12960(e).

1     Plaintiff claims she was denied promotions in 2014 due to gender discrimination.
2   (Complaint ¶19). Defendants argue that Plaintiff's "failure to promote" claims should be
3   dismissed as untimely because Plaintiff did not file her complaint with DFEH within the
4   required time period.  (Mot. at 9).

5     In order to meet the statute of limitations, Plaintiff was required to file her
6   complaint with the DFEH no later than 2017, depending on her underlying assertions.
7   However, the DFEH received Plaintiff's complaint of discrimination on January 3, 2018.
8   (Complaint ¶ 9; Ex A.) Therefore, Plaintiff's claims based on failure to promote due to
9   gender discrimination are time barred.  Defendants' motion for summary judgment is
10  granted as to these claims.

11         **B.    Evidence of Discrimination**

12     The Court next turns to Plaintiff's claim that she was wrongfully terminated.
13  FEHA makes it unlawful "[f]or an employer, because of . . . gender . . . to discharge the
14  person from employment[.]" Cal. Gov't Code § 12940(a). California courts have adopted
15  the three-step *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)
16  framework for assessing employment discrimination claims based on disparate treatment.
17  *Guz v. Bechtel National, Inc, 24 Cal.4th 317, 355 (2000); Trop v. Sony Pictures Entm't,*
18  *Inc*., 29 Cal. Rptr. 3d 144, 152 (Cal. Ct. App. 2005). The method a Court employs when
19  applying the framework turns on whether a plaintiff seeks to prove her claim through
20  direct or indirect evidence. *Enlow v. Salem-Keizer Yellow Cab Co., Inc*., 389 F.3d 802,
21  812 (9th Cir. 2004); *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985).

22     When a plaintiff premises her discrimination claim on direct evidence, the
23  *McDonnell Douglas* framework does not apply. *Trop*, 29 Cal. Rptr. 3d at 152–53 ("The
24  United States Supreme Court has held . . . that 'the *McDonnell Douglas* test is
25  inapplicable where the plaintiff presents direct evidence of discrimination.'" (quoting
26  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). Direct evidence is
27  "evidence, which, if believed, proves the fact of discriminatory animus without inference
28  or presumption[.]" *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th

Cir. 2005); *Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652, 664 (Cal. Ct. App. 2000). "[W]here a plaintiff offers direct evidence of discrimination that is believed by the trier of fact, the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor." *Trop*, 29 Cal. Rptr. 3d at 152; *Morgan*, 105 Cal. Rptr. 2d at 652. Direct evidence of discrimination is difficult to discover, which results in most claims being proved circumstantially under the *McDonnell Douglas* framework. *Guz*, 24 Cal.4th at 354; *Trop*, 29 Cal. Rptr. 3d at 152.

### 1.   Direct Evidence

Plaintiff claims that her direct supervisor, Patrick Touhey, told her that she "needed to stop mothering [her] employees," which she believed was a comment based on her gender.  (Pl. Dep. Ex A at 42.)  Plaintiff further alleges that she believed Mr. Smith, her second level supervisor, did not want a female SCM because she had applied for multiple positions in his geographic area but was not hired for them. (Pl. Dep. Ex A at 47-48.) Smith was in the final interview before Plaintiff secured the position in San Diego, but Plaintiff stated she had never seen a vice president of operations in an interview before. (*Id.*) The interview occurred after she heard herself referred to as "that central female manager, that girl manager from the central area."  (*Id.*)

Defendants argue that Touhey's "isolated comment made by a non-decision maker is insufficient to prove actionable discrimination." (Mot. at 10)  Defendants further contend that Plaintiff has not presented any direct evidence of gender discrimination because she cannot point to any negative comments by Smith that demonstrate discriminatory animus toward women.  (Mot. at 10).  In addition, Smith was in the interview for the SCM job in San Diego, which she obtained.  Despite her complaints, Defendants note that Plaintiff never made a discrimination complaint to XPO during her employment. (*Id.*)

While stray remarks of non-decision makers may be probative, they "do not constitute 'direct evidence' of discriminatory animus."  *Reid v. Google,* 50 Cal.4[th] 512,

541-542 (2010). However, a stray remark, when combined with other evidence of pretext, may create a cumulative effect that is sufficient to defeat summary judgment. *Id*. It is undisputed that Mr. Touhey was Plaintiff's direct supervisor, but he was not involved in the investigation or decision to terminate her employment. This single comment is insufficient on its own to demonstrate direct evidence of gender discrimination. *Reid,* 50 Cal.4th at 541-542.

With regard to Plaintiff's claims against Mr. Smith, she has presented no direct evidence that he had discriminatory animus toward Plaintiff or other female employees. Instead, Mr. Smith was present at Plaintiff's interview for the San Diego SCM position, a spot she ultimately secured. "[A]n employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." *Coghlan v. American Seafoods, Co. LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005). For the foregoing reasons, Plaintiff has not produced direct evidence of discrimination, therefore, Plaintiff must establish discrimination through the *McDonnell-Douglas* burden-shifting framework.

### 2. *McDonnell Douglas* test

Under *McDonnell Douglas* the plaintiff must first establish a prima facie case of discrimination. *Guz*, 24 Cal.4th at 354; *see also Sako v. Wells Fargo Bank, N.A.*, No. 14-cv-1034-GPC-JMA, 2015 WL 5022307, at *8 (S.D. Cal. Aug. 21, 2015).

To establish a *prima facie* case of discrimination under FEHA, a plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for her position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). The requirements of the *prima facie* case are "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505 (1993); *Aragon v. Rep. Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

1   Once a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to

2   offer a legitimate, nondiscriminatory, reason for the adverse employment action.

3   *Fonseca*, 374 F.3d at 849; *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets

4   this burden, the plaintiff must show through "substantial responsive evidence" that the

5   employer's reason is untrue or pretext for discrimination, and that there is a genuine issue

6   of material fact as to whether defendant's proffered justification is pre-textual. *Fonseca*,

7   374 F.3d at 849; *McDonnell Douglas* 411 U.S. at 804.

8   The parties agree that Plaintiff is a member of a protected class because she is a

9   woman, and she suffered an adverse employment action when she was terminated.

10  Therefore, Plaintiff has met the first and third requirements to show a prima facie case of

11  discrimination.

12  As to the second element, Defendants argue that Plaintiff was terminated due to

13  unsatisfactory job performance and a loss of confidence in her leadership by her team.

14  (Motion at 5, 11). During the investigatory interviews, Defendants point out that

15  employees stated they respected Plaintiff for her hard work, but felt she was a micro-

16  manager who often instituted disciplinary action when it was not warranted.  (Mairena

17  Decl.,¶ 9; Ex E March 18, 2017 E-mail Visit Recap.)  Defendants contend that employees

18  further felt that they were "walking on eggshells" around Plaintiff, that she often broke

19  down emotionally, and was harsh with her verbal communication, making it difficult to

20  speak openly about issues.  (Mairena Decl. ¶13; Ex. G Smith Investigation Summary).

21  According to Defendants, a supervisor could perform well based on metrics but still fail

22  in terms of leadership. (Mot. at 11).

23  Plaintiff counters that over the course of her ten-year employment with Defendant

24  XPO and its predecessor she had four Quarterly Leader Awards, had good reviews and

25  never had a disciplinary Letter of Instruction (LOI). (Oppo. at 2; Pl. Dep. at 53). In

26  addition, Plaintiff was awarded a bonus two weeks before her termination, and her direct

27

28

supervisor, Mr. Touhey, indicated she was performing well at her job.[2] (Ex A. Pl. Dep., at 53-54; Touhey Declaration ¶¶ 6-7).

She stated:

I was the 35th most profitable service center in the United States, had just been given a $26,000 bonus for being so good. I had received a KEIP award. I had received four QLA's. I had been sent on several missions - - we call them missions – by the VP of HR, Bruce Moss, just the year before that to go in and do an engagement survey because my engagement had been so high in the past. And I was known as the manager that engaged her employees.

Let's see. I had the second highest engagement score when we did a Connexus score in 2010 at my facility. I was featured in a Forbes magazine in 2013. I had nothing but accolades in my file.  I had a few minor discipline issues from like 2011. But I was – I was praised.  I was very praised as an employee. And then all of a sudden…

(Pl. Dep. Ex. A at 53-54).

Mr. Touhey confirmed Plaintiff's self -reported success, stating that "she had good performance," had "good work reviews," and he never issued her a Letter of Instruction.

---

[2] Defendants object to Touhey's observations that Plaintiff had good performance, good work reviews, and was never issued a Letter of Instruction as irrelevant. (Defendants' Objections to Evidence at 2).  The Court finds Touhey's statements relevant to the issue of Plaintiff's job performance and therefore overrules the objections.  Defendants also object to Touhey's statement that Plaintiff took her job seriously and with passion for lack of foundation, lack of personal knowledge, speculation, relevancy and hearsay.  (*Id.* at 2-3).

As Plaintiff's direct supervisor Touhey had personal knowledge of Plaintiff's work demeanor, habits, and ethics. At the outset of his Declaration, Touhey stated he has personal knowledge of the facts set forth in the declaration, and he described his responsibilities working for XPO from June 2009 to June 2018, which included operations, sales, service, safety, maintenance and human resources for the geographic territory that included most of Southern California.  (Touhey Dec. ¶¶ 1, 4).  Accordingly, Defendants' objections are overruled as to this statement for purposes of this summary judgment motion.

(Touhey Decl. 6.) Touhey further stated that Plaintiff "took her job seriously and with passion," enforcing company policy which "included taking steps to discipline employees, and drafting Letters of Instruction to employees who were in need of corrective action." (*Id*. at 7). In light of the fact that the service center was profitable and Plaintiff had just received a bonus, she contends that her termination was due to her gender. (Ex. A, Pl. Dep., at 53).

There is sufficient evidence in the record for the Court to infer that Plaintiff was qualified and competently performing her job. Plaintiff was recognized as successfully managing a lucrative facility and appears to have also excelled at employee "engagement," with employees stating they respected Plaintiff for her "hard work." (Mot. Ex G). Defendants take issue with Plaintiff's self-reported job excellence, however, her immediate supervisor confirmed her overall successful job performance, and her awards and bonus are quantifiable. Defendants further claim that a manager could produce good "metrics" but not be a good leader, which Plaintiff acknowledges, but her "engagement" expertise suggests she was exceptional at both. (Pl. Dep. Ex. A at 54).

The employees who were asked to be part of the investigation reported feeling that they were disciplined without having a chance to discuss the issues, and that they felt that every day they might get disciplined or fired. (Mot. Ex. B). The summary emails from Mairena and Lenahan after they conducted the investigation note that the disciplined employees felt that Plaintiff should have spoken to them first before issuing discipline. (Mot. Ex B, C, E, F). The employees who took part in the March 17, 2017, Round Table claimed that they were getting written up for "every little thing," they felt "stressed, overworked, and missing a work-life balance" and that "[t]hey feel they have short tempers and get upset with management due to being tired." (Mot. Ex. D).

While Plaintiff was criticized for issuing discipline without warning, the evidence raises a question as to whether this was limited to Plaintiff and her management style, or if this was the company policy.  Phil Bennet, a longtime employee, stated that "ever since the XPO takeover nothing has changed for the good….every day we come in and can

3:18-cv-2743-L-MDD

expect to get written up." (Mot. Ex. C). Moreover, Plaintiff did not have a chance to modify her method of disciplining employees because she only learned of the complaints when documents were produced by Defendant for purposes of the litigation. (Pl. Dep. Ex A at 17-19). When Plaintiff asked who did the investigation and if they could quantify the poor performance, she was told they could not. (Pl. Dep. Ex A at 24-25).

Plaintiff's awards and accolades, along with her employee engagement success, are in sharp contrast to the complaints of the disciplined employees. Drawing all inferences from the underlying facts in the light most favorable to the nonmoving party, Plaintiff has produced sufficient evidence to raise a genuine issue of material fact regarding her performance to satisfy the second element of the prima facie case for purposes of summary judgment. *See Matsushita*, 475 U.S. at 587.

In order to meet the final element of a prima facie case, Plaintiff must show that similarly situated individuals outside her protected class were treated more favorably, or that other circumstances surrounding her termination give rise to an inference of discrimination. *Fonseca*, 374 F.3d at 847.

Plaintiff contends that male SCM's were treated differently than she was because reports and complaints of unionization of employees occurred in other locations but the SCM's were not terminated.[3] (Oppo. at 12; Plt. Dep., 37-38, 39-41, 53; Touhey Decl. ¶ 17). Touhey stated that employees at XPO Santa Fe, Springs [sic] petitioned to have a

---

[3] Defendants object to Touhey's testimony concerning other XPO facilities and the actions taken subsequent to union activity occurring at those facilities arguing that Touhey did not lay a sufficient foundation to establish where he learned the information, that he lacks personal knowledge about the SCMs employment history, and that the information is hearsay because he learned it from Plaintiff. (Def. Objections to Pl. Evidence at 6-8).

Touhey states he has personal knowledge of the facts set forth in the declaration due to his management position at XPO. (Touhey Dec. ¶¶ 1, 4). In light of Touhey's extensive areas of responsibility for the geographic area in which the XPO centers where union activity occurred, the Court overrules Defendants' objections and admits the testimony for purposes of the motion for summary judgment.

union vote, XPO was able to defeat the union activity, and the SCM Mark Logan was not terminated from his job. (Touhey Decl. ¶ 17(a)). Similarly, at XPO San Fernando Valley, California, the employees petitioned to have a union vote, XPO defeated the union activity, and Todd Williams, the SCM, was not terminated from his job. (*Id*. at ¶ 17(c)). At XPO Downtown Los Angeles, California, the employees successfully petitioned to have a union vote, the facility was unionized, and the SCM Paul Styers, was not terminated from his job but instead received a promotion to the facility in Portland, Oregon. (*Id*. at ¶ 17(b)). At the XPO Bakersfield, California, the employees petitioned for a union vote, the vote was defeated, and the SCM David Cotter was demoted but not terminated from his job. (*Id*. at ¶ 17(d)). However, another female SCM, Nicole Woods, was terminated after her facility had a union vote, according to Plaintiff. (Pl. Dep. Ex. A at 38).

Defendants argue first that union activity has nothing to do with gender and the allegations contradict her claims that she was terminated due to her gender. (Motion at 12). Defendants next contends that Plaintiff did not know the employment history of the male SCM's, "including being unaware of their personnel files, corrective actions, or pay history," therefore she cannot argue that they are adequate comparators. (Motion at 12; Pl. Dep., Ex A, 39-41; 58; 61). Moreover, Defendants claim that under the "same actor" principle, there is a strong inference that the employer was not biased against the protected class, noting that Mr. Smith interviewed and hired Plaintiff, then made the decision to terminate her during a two-year time span. (Oppo. at 12; Pl. Dep., Ex. A, 32:5-8; Mairena Decl., ¶ 10).

Plaintiff has produced sufficient evidence to raise an inference that male SCM's at other facilities in the region were not terminated after union activity occurred at their facilities. In contrast, another female SCM, Nicole Woods, was reportedly terminated after the employees at her facility had a union vote. Although Defendants argue that other SCM's are not appropriate comparators because Plaintiff does not know their individual employment histories, Plaintiff did not have access to that confidential

13

information.  On the other hand, SCM's at similarly ranked facilities would likely have similar levels of skill and experience. Viewing the evidence in the light most favorable to Plaintiff, she has raised a genuine issue of material fact as to whether similarly situated males were treated differently, giving rise to an inference of discrimination. *See Fonseca*, 374 F.3d at 847. Therefore, Plaintiff has met the last element of a prima facie case.

Because Plaintiff has demonstrated a prima facie case of discrimination, the burden shifts to the Defendants to offer a legitimate, nondiscriminatory, reason for the adverse employment action.  *Fonseca*, 374 F.3d at 849; *McDonnell Douglas*, 411 U.S. 792, 802 (1973).  Defendants have produced evidence that Plaintiff was terminated because she lost the confidence of her team and failed in her leadership duties which constitutes a legitimate, nondiscriminatory reason for her termination.

The burden shifts back to Plaintiff who must show through "substantial responsive evidence" that the employer's reason is untrue or pretext for discrimination, and that there is a genuine issue of material fact as to whether defendant's proffered justification is pre-textual.  *Fonseca*, 374 F.3d at 849; *McDonnell Douglas* 411 U.S. at 804. "'[A] plaintiff can prove pretext either '(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.'" *Fonseca*, 374 F.3d at 849.

Defendants argue that Plaintiff cannot submit any specific substantial responsive evidence establishing that XPO's motives were pretextual.  First, Defendants contend the information and findings relied upon by the decision-makers were more than sufficient to support Plaintiff's termination.  (Mot. at 14).  Second, Plaintiff cannot show that the true reason for her termination was her gender, relying only on a single remark by a non-decision-maker that she was "mothering" her employees.  (*Id*. at 20) Defendants contend that there is simply no evidence that the decision makers were motived by discriminatory animus.  (*Id*. at 21).

The evidence supporting Plaintiff's prima facie case is sufficiently robust to raise a genuine issue of material fact as to the truth of Defendants' proffered nondiscriminatory reason, that Plaintiff's leadership was ineffective, in light of numerous leadership accolades and her "engagement" expertise. *See Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir.2000) ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.") Moreover, review of the management team emails summarizing the investigatory meetings reveals widespread discontent with short staffing, other management personnel, and concerns about freight handling.  The management team's main concern appeared to be that complaining employees would look to union for help and influence other employees, which XPO feared. (Mot. Ex. G). Mr. Smith stated "I am concerned that if things continue with this type of leadership we will give these few employees the platform to make their case that they need outside help because ….things haven't improved."  (*Id.*) Although Plaintiff's management style was described as heavy- handed, she had a long and distinguished career prior to XPO's takeover, making Defendant's proffered reasons for her termination unworthy of credence. *Fonseca*, 374 F.3d at 849.  Defendant's motion for summary adjudication of Plaintiff's employment discrimination claim is denied.

## C.     Failure to Prevent Discrimination or Retaliation

Under FEHA, it is an unlawful employment practice "for an employer ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace. Cal. Govt. Code § 12940(k). To prevail on a claim for failure to prevent discrimination or retaliation, a plaintiff must establish that: 1) she was an employee of defendant; 2) she was subjected to discrimination or retaliation; 3) the defendant failed to take all reasonable steps to prevent discrimination or retaliation; 4) employee was harmed; and 5) this failure caused the plaintiff to suffer injury, damage, loss, or harm.  California Civil Jury Instructions (CACI) § 2527.

Plaintiff claims that Defendant failed to take all reasonable steps to prevent discrimination, harassment and retaliation, and failed to take immediate corrective action to remedy the discrimination.  (Complaint at ¶ 45).  Defendant counters that Plaintiff's gender discrimination and retaliation claims fail, therefore, her "failure to prevent" claim must also fail. (Mot. at 17)  In addition, Defendant argues that XPO had sound policies with respect to discrimination and retaliation, and Plaintiff received training in these policies.  (*Id*.)

As indicated above, Plaintiff has raised a genuine issue of material fact as to whether she was subjected to gender discrimination, therefore, her claim of failure to prevent employment discrimination also survives summary adjudication. Plaintiff does not, however, sufficiently plead her claim for retaliation, as noted below.  Accordingly, the Court denies Defendant's motion for summary adjudication as to Plaintiff's claim of failure to prevent discrimination, and grants Defendant's motion for summary adjudication as to Plaintiff's claim of failure to prevent retaliation.

### D.    Retaliation

The Court addresses Plaintiff's retaliation claim despite the fact that dismissal of this claim would be warranted on the basis that she has not responded to Defendants' attack on these claims. Fed. R. Civ. Pro. 56(e). FEHA makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h) (emphasis added). A prima facie case of retaliation under FEHA can be established by the Plaintiff by showing: (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is a causal link between the two.  *See Morgan v. Regents of California*, 105 Cal. Rptr.2d 652, 666 (2000). "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices'" under 42

U.S.C. § 2000e–3(a*)." Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185, 1197 (9th Cir. 2003). A plaintiff must make a showing sufficient to allow a court to infer that the defendant knew plaintiff engaged in protected activity.  *Id.*

The *McDonnell Douglas* burden shifting framework applies to FEHA retaliation claims.  *Lawler v. Montlanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013); *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005).  If a plaintiff establishes a prima facie case of retaliation, then the burden shifts back to defendant to proffer a legitimate, non-retaliatory reasons for the adverse employment action. *Yanowitz*, 36 Cal.4th at 1042. If the defendant offers a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to prove intentional retaliation. *Id*.

Defendant argues that Plaintiff cannot demonstrate a prima facie case of retaliation because she did not engage in protected activity, and never complained to anyone at XPO about gender discrimination or retaliation.  (Mot. at 15).  In response, Plaintiff argues that she engaged in protected activity by reporting to her supervisor that she had disciplined four male employees, who then made complaints "because a female manager was disciplining them," and talked about union activity.  (Oppp. at 18). Plaintiff contends that the complaints from those four men resulted in the investigation which led to her termination.  (Oppo. at 18).

Plaintiff has not produced sufficient evidence to show she engaged in protected activity such as filing a complaint of employment discrimination, or challenging discriminatory practices of XPO. Plaintiff states that she did not file any discrimination complaint because she "would have been fired," and that "if [she] stirred the kettle, the squeaky wheel, you know, I just felt like I would be terminated. They would look for a way to terminate me."  (Pl. Dep. Ex. A at 60-62).  Given the length and breadth of Plaintiff's employment at XPO, and the general culture of the company, Plaintiff's concerns appear justified. However, by failing to file a complaint of gender discrimination, she did not put XPO on notice about her gender discrimination concerns, therefore any action they took could not have been in retaliation for her engaging in

protected activity.  *Raad*, 323 F.3d at 1197. Plaintiff fails to meet the first element of a prima facie case of retaliation, therefore, the Court grants Defendant's motion for summary adjudication of claim three for retaliation.

E.    **Wrongful Termination in Violation of Public Policy**

"A common law claim for wrongful termination in violation of public policy requires a showing that there has been a violation of a fundamental public policy embodied in a statute."  *Merrick v. Hilton Worldwide, Inc*., 867 F.3d 1139, 1150 (9th Cir. 2017)

Plaintiff alleges wrongful termination in violation of public policy under California Government Code § 12920 claiming she was treated differently than similarly situation male counterparts in different regions.  (Complaint at ¶64).  Defendant argues that the claim is completely duplicative of Plaintiff's gender discrimination and retaliation claims, therefore the claim fails because there is no basis for either the gender discrimination or retaliation claims.  (Mot. at 17).

It is the stated public policy of California that "it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . gender."  Cal. Gov't. Code §12920. As stated above, Plaintiff has sufficiently raised a genuine issue of material fact regarding her claim of gender discrimination because she produced sufficient evidence for the Court to infer that she was performing her job satisfactorily and male SCM's were treated differently. As a result, Plaintiff's claim of wrongful termination in violation of public policy survives. Defendant's motion for summary judgment is denied as to Plaintiff's' claim of wrongful termination.

F.    **Declaratory Relief**

"Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir.2001) (citations and quotation marks omitted). "When a plaintiff seeks

declaratory relief ... the 'test for mootness ... is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir.2007).

Plaintiff seeks a judicial determination of her rights and duties, including a declaration that she experienced discrimination and retaliation at XPO and an injunction to stop discriminatory practices. (Complaint ¶ 77). Specifically, Plaintiff alleges that

> she was discriminated and retaliated against due to her enforcement of company policy. Furthermore, this retaliation was specifically related to the exercise of her authority to enforce company policy and how that related to male employees. Additionally, this undermined Plaintiff's position following rumors of the employees looking to unionize.

(*Id.* at ¶ 76).

Plaintiff claims that Defendant was aware of anti-discrimination laws but conducted a flawed investigation process to subjectively terminate a female SCM. (Oppo. at 20-21).

Defendant argues that Plaintiff's request for declaratory and injunctive relief must be denied because she does not have standing to seek this form of relief now that she is no longer an employee of XPO. (Mot. at 18).

While it is not disputed that the parties have adverse legal interests, Plaintiff has not produced sufficient evidence for this Court to find that she is entitled to injunctive or declaratory relief regarding discrimination and retaliation related to her enforcement of company policy. She is no longer employed by XPO, therefore there is no longer an immediate threat of irreparable injury. *Clark*, 259 F.3d at 1007. Defendant's motion for summary judgment is granted as to Plaintiff's claim for declaratory and injunctive relief.

G.   **Punitive Damages**

Under California law, punitive damages are appropriate where a plaintiff establishes by clear and convincing evidence that the defendant is guilty of (1) fraud, (2)

3:18-cv-2743-L-MDD

oppression or (3) malice. Cal. Civ.Code § 3294(a). "[A] plaintiff may not recover punitive damages unless the defendant acted with intent or engaged in 'despicable conduct.'" *In re First Alliance Mortg. Co*. 471 F.3d 977, 998 (9th Cir. 2006).  "The adjective 'despicable' connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Lackner v. North,* 135 Cal.App.4th 1188,1210 (2006).

Defendant contends that Plaintiff is not entitled to punitive damages because no officer, director, or managing agent acted with malice, oppression, or fraud toward Plaintiff.  (Mot. at 19). Instead, Plaintiff was terminated after an investigation into Plaintiff's management of her team.  (*Id*.)  Defendant claims that neither "Ms. Mairena, Ms. Lenahan, or Mr. Smith - the only potential managing agents – acted with any intent to harm Plaintiff,' but instead conducted a multi-level investigation in response to complaints from Plaintiff's team.   (Reply at 19).  Moreover, Defendant argues that during Plaintiff's employment, XPO maintained sound policies with respect to discrimination.

Plaintiff counters that she is entitled to punitive damages because the investigation process used flawed and biased opinions from employees who she had recently discipled to support the decision to terminate her employment. (Oppo. at 21).  Ms. Lenahan reportedly had issues working with strong women like Plaintiff, according to Mr. Touhey.   (Touhey Dec. ¶ 24, p.5 11. 21-22).  In addition, Touhey stated that the process by which employees were investigated frequently included small samplings of subordinate employees, often with only complaining individuals, thereby leading to incomplete investigations.  (*Id*. at ¶¶ 22, 23). Plaintiff alleges that Ms. Lenahan included the four complaining employees in her investigation, with few other employees to offer their perspectives, which led to a biased and flawed investigation supporting her termination. She argues that XPO had knowledge of anti-discrimination laws and yet terminated her employment for discriminatory reasons.  (*Id*.) In her view, only a jury can assess whether her superiors acted with malice.  (*Id*. at 21-22).

Although Plaintiff asserts that the investigation was biased and unfair, she has not produced sufficient evidence from which this Court can infer the supervisor team acted with the required malicious intent in defiance of recognized gender discrimination policies. *In re First Alliance Mortg. Co*. 471 F.3d at 998.   Defendant's motion for summary adjudication of Plaintiff's request for punitive damages is therefore granted.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is: (1) denied with respect to Plaintiff's gender discrimination claim; (2) granted in part and denied in part as to Plaintiff's failure to prevent claim; (3) granted as to Plaintiff's retaliation claim; (4) denied as to Plaintiff's wrongful termination claim; (5) granted as to Plaintiff's declaratory relief claim; and (6) granted as to Plaintiff's punitive damages request.

**IT IS SO ORDERED**.

Dated:  November 30, 2020

Hon. M. James Lorenz
United States District Judge